# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 131

### OCTOBER TERM, A.D. 2014

*October 23, 2014*

TED A. BULLOCK,

Appellant
(Plaintiff),

v.

TERESA M. BULLOCK,

Appellee
(Defendant).

S-14-0033, S-14-0069

TED A. BULLOCK,

Appellant
(Plaintiff),

v.

TERESA M. BULLOCK,

Appellee
(Defendant).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
    Mary Elizabeth Galvan, Galvan & Fritzen, Laramie, WY.

*Representing Appellee:*
    Thomas Patrick Keegan, Keegan & Winslow, Cody, WY.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   Ted Bullock (Father) and Teresa Bullock (Mother) were divorced in February 2013.  In mid-summer 2013, Mother filed a contempt motion alleging Father had violated the divorce decree by failing to obtain health insurance coverage for the parties' daughter, failing to exercise summer visitation with the parties' son, and interfering with Mother's use of outbuildings associated with the residence in which she and the children were entitled to reside under the decree.  The district court entered orders:  (1) holding Father in contempt for failing to provide insurance and/or proof of insurance for the parties' daughter; (2) sanctioning Father for failing to exercise summer visitation with the parties' son; (3) ordering that Mother would have use of the outbuildings in dispute; and (4) requiring Father to pay Mother's attorney fees associated with the contempt motion.  Father appeals the order relating to the health insurance and visitation and the order requiring that he pay Mother's attorney fees.  We affirm in part and reverse in part.

## ISSUES

[¶2]   Father separately appealed the contempt and attorney fees orders, and those filings have been consolidated on appeal.  With respect to Father's appeal of the contempt order, Father presents four issues.  The first two issues relate to the health insurance findings, and the last two issues relate to the visitation findings.  Father states those four issues as follows:

> A.    Whether the district court committed a clear and grave abuse of discretion, committed a serious procedural error, or violated a principle of law in holding [Father] in contempt of court for failing to comply with the medical support provisions of the divorce decree in the absence of a clear and unambiguous order requiring him to file proof of insurance or addressing the sufficiency of medical insurance.
>
> B.    Whether the district court abused its discretion by modifying the medical support provisions of the *Decree of Divorce* in the absence of a proper pleading for modification by conditioning the sufficiency of the insurance provided by [Father] on [Mother's] approval.
>
> C.    Whether the district court had subject matter jurisdiction to impose a monetary sanction against [Father] for failing to exercise visitation with an adult

1

child to enforce an agreement which was outside the scope of the *Decree of Divorce*.

    D.    Whether the district court committed a grave procedural error and abused its discretion by penalizing [Father] in the form of a money judgment in favor of [Mother] in the absence of procedural due process in a criminal contempt proceeding.

[¶3]    In his appeal of the attorney fees order, Father presents a single issue and states that issue as follows:

> Whether the district court's award of attorney's fees and costs to the [Mother] in a contempt action should be vacated if the district court erred, as a matter of law, in finding [Father] in contempt of court for violating the medical support provisions of the *Decree of Divorce*.

## FACTS

[¶4]    Father and Mother were married on April 13, 2006. At the time of their marriage, Mother had two children, CCB, born in 1994, and KEB, born in 1996. CCB is severely disabled and requires full time care, and KEB has suffered a traumatic brain injury that interferes with her ability to learn and will likely prevent her from obtaining a high school diploma. Father adopted the children in 2007.

[¶5]    On February 23, 2012, Father filed a complaint for divorce, and on February 19, 2013, the district court entered a divorce decree. The divorce decree incorporated the parties' stipulated Property Settlement, Child Custody and Child Support Agreement (Agreement). Pursuant to the Agreement, Mother was awarded primary physical custody of the children. Father agreed to pay lifetime support for CCB and support for KEB until she graduates from high school or reaches the age of twenty-one, whichever occurs first. The parties agreed that when KEB reaches the age of twenty-one, they would have KEB evaluated to determine whether lifetime support would be necessary. The Agreement further specified that Father would provide health insurance for KEB:

> [Father] will arrange for health insurance for KEB. CCB is currently receiving Medicaid. Each party will be responsible for one-half of all medical, dental, counseling, optical and/or orthodontic bills for the children not covered by medical insurance. Each party will also be responsible for one half of all travel expenses associated with the children's health care.

2

[¶6]    Regarding visitation, the Agreement entitled Father to weekend and holiday visitation.    Relevant to this appeal, the Agreement provided as follows concerning summer visitation:

> Both parties may opt to have the children for two consecutive weeks during the summer visitation in order to accommodate longer trips.    The parties will discuss this possibility and make such arrangements before May 31 of every year.

[¶7]    The Agreement also addressed Mother's living accommodations.    During the marriage the parties did not acquire real property and had lived in a home on ranch property owned by Father's family.    The Agreement provided that Mother and the parties' children would continue to reside in the marital home until both children graduated from high school.

[¶8]    On July 8, 2013, Mother filed a motion for order to show cause why Father should not be held in contempt of court for violating the Agreement.    Through that motion, Mother alleged that Father violated the Agreement by: 1) interfering with her use of the marital home and associated outbuildings; 2) failing to exercise his visitation rights with the children and most particularly CCB; and 3) failing to procure health insurance for KEB.  On July 19, 2013, the district court issued a show cause order requiring Father to appear at a hearing on October 1, 2013 and show cause why he should not be held in contempt.

[¶9]    On October 1 and October 28, 2013, the court held evidentiary hearings on Mother's contempt motion.    At the conclusion of the hearing, the court orally ruled that the Agreement permitted Mother to use the outbuildings associated with the marital home, including the barn and shop.    With respect to the health insurance coverage for KEB, the court ruled that the documents that Father submitted during the hearing did not qualify as health insurance and that Father was therefore in contempt.    The court further ruled that Father could purge the contempt by submitting evidence of acceptable health insurance coverage by January 1st.    Last, the court ruled that Father must reimburse Mother for day care costs she incurred during periods in which Father was supposed to have summer visitation with CCB.

[¶10]  On October 31, 2013, Father filed a motion for new trial pursuant to W.R.C.P. 59.  Attached to the motion was a copy of the health insurance policy that Father had obtained for KEB, with an effective date of July 18, 2013.

[¶11]  On November 21, 2013, the court issued its Order on Motion for Contempt.  The written order provided, in part:

3

The Court, having heard the evidence of the parties and having considered their exhibits, hereby finds and orders as follows:

. . . .

4.      The Court, having reviewed the insurance information, finds that there is not sufficient proof of a health insurance policy in place for KEB. [Father] shall be held in contempt of court for failing to provide insurance for KEB and/or proof of insurance, but may purge himself of contempt by presenting an acceptable health insurance policy to [Mother] and her attorney by January 1, 2014.

. . . .

6.      [Father and Mother] entered into an agreement for summer visitation with regard to CCB and the Court finds that [Father] failed to follow through on the visitation, resulting in daycare costs that were paid by [Mother]. The following daycare costs are hereby awarded to [Mother]: $164.50, $124.25, $122.50 and $200.00. [Mother] is hereby awarded a judgment against [Father] in the amount of $611.25.

. . . .

8.      [Mother's] attorney may submit an Affidavit of Attorney's Fees pursuant to Rule 54 of the Wyoming Rules of Civil Procedure.

[¶12]  On December 11, 2013, Mother filed her application for an award of attorney fees. On December 17, 2013, Father filed a notice of appeal from the Order on Motion for Contempt. On December 23, 2013, Father filed a Notice of Supplemental Filing Proof of Insurance. This filing had attached to it a summary of health insurance benefits showing that KEB was a named beneficiary on the health insurance coverage Father's new wife had through her employer.

[¶13]  On January 14, 2014, the court held a hearing on Mother's attorney fees motion. On January 21, 2014, the court issued a decision letter addressing the fees application and awarding the requested fees, and on February 5, 2014, the court issued an Order Awarding Attorney's Fees. On February 10, 2014, Father filed a Notice of Compliance with Orders, notifying the court that Father had paid to Mother all amounts ordered by the court. On February 18, 2014, Father filed a notice of appeal from the Order Awarding Attorney's Fees. On April 16, 2014, this Court issued an Order Consolidating Appeals.

4

## STANDARD OF REVIEW

[¶14]  We review a district court's exercise of its contempt powers as follows:

> This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Roberts v. Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo.2013). *See also Munoz v. Munoz*, 2002 WY 4, ¶ 6, 39 P.3d 390, 392 (Wyo.2002); *Olsen v. Olsen*, 2013 WY 115, ¶ 33, 310 P.3d 888, 896 (Wyo.2013). In reviewing the exercise of a district court's broad discretion under its contempt powers, we must determine whether the court reasonably could have concluded as it did. *Roberts*, ¶ 14, 304 P.3d at 120, citing *Stephens v. Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo.2010).

*Shindell v. Shindell*, 2014 WY 51, ¶ 7, 322 P.3d 1270, 1273 (Wyo. 2014); *see also McAdam v. McAdam*, 2014 WY 123, ¶ 9, ___ P.3d ___ (Wyo. 2014).

[¶15]  A district court's enforcement of a divorce decree raises a question of law, which we review de novo. *Walker v. Walker*, 2013 WY 132, ¶ 36, 311 P.3d 170, 177-78 (Wyo. 2013).  Finally, we review an award of attorney fees as follows:

> The question of whether there is legal authority to award attorney fees is one of law, which we review de novo. *See, Thorkildsen v. Belden*, 2011 WY 26, ¶ 8, 247 P.3d 60, 62 (Wyo.2011); *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 149, 226 P.3d 889, 935 (Wyo.2010); *Breitenstine v. Breitenstine*, 2006 WY 48, ¶ 12, 132 P.3d 189, 193 (Wyo.2006). The final attorney fee award is, however, reviewed for abuse of discretion. *Mueller v. Zimmer*, 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo.2007).

*Evans v. Moyer*, 2012 WY 111, ¶ 37, 282 P.3d 1203, 1214 (Wyo. 2012).

## DISCUSSION

[¶16]  In its Order on Motion for Contempt, the district court ordered Father to allow Mother use of outbuildings associated with the marital home, to reimburse Mother for day care expenses incurred when Father did not exercise summer visitation with CCB, and to submit proof of health insurance for KEB.  By separate order, the court ordered

Father to pay Mother's attorney fees and costs associated with her contempt motion. Father did not appeal the contempt order as it pertains to Mother's use of the outbuildings, but he does challenge the portions of the contempt order relating to his visitation with CCB and his obligation to obtain health insurance for KEB. We will first address Father's challenges to the contempt findings and then turn to his challenge to the attorney fees award.[1]

## A. Contempt Findings

[¶17] A civil contempt order must be supported by clear and convincing evidence. *McAdam*, ¶ 14, ___ P.3d ___; *Shindell*, ¶ 10, 322 P.3d at 1274. Clear and convincing evidence is "evidence that would persuade a finder of fact that the truth of the contention is highly probable." *Id.* The elements of civil contempt are: "1) an effective court order that required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order." *Id.* Once these elements are proven, the burden shifts to the person charged with contempt to show he or she was unable to comply. *Id.*

## 1. Visitation Contempt and Award of Day Care Costs

[¶18] In its Order on Motion for Contempt, the district court found Father in contempt for failing to exercise visitation with CCB as required by the parties' Agreement.[2] Based on that finding, the court ordered Father to reimburse Mother for the day care costs she incurred during the period Father was supposed to be exercising visitation. We find no support for this ruling in the record.

[¶19] The parties' Agreement allows Father the opportunity to exercise visitation with the parties' children. It does not mandate that visitation. In regard to summer visitation, the Agreement allows the parties to "opt to have the children for two consecutive weeks

---

[1] Mother argues that Father's appeal of the contempt order is moot because Father has already paid all amounts ordered by the district court as a result of the contempt findings and in doing so has purged himself of the contempt. We disagree. First, it is not clear from the district court's ruling that payment of the amounts ordered operated to purge the entire contempt. The Order on Motion for Contempt provided that Father could purge his contempt on the insurance violation by providing proof of insurance, but it contained no similar provision on the other violations. Second, the contempt violations are based on findings that may affect the parties going forward. For these reasons, a dispute remains on which this Court's decision will have an impact and the matter is not moot. *See KO v. LDH (In re MEO)*, 2006 WY 87, ¶ 27, 138 P.3d 1145, 1153-54 (Wyo. 2006) (to remain a justiciable controversy, there must be "a sufficient prospect that the decision will have an impact on the parties.").

[2] The district court's order did not explicitly state that the court was holding Father in contempt for failing to exercise his visitation with CCB. The finding that Father violated the Agreement, and the associated award of costs, were, however, in the contempt order, and we will therefore treat the court's ruling as if it were a contempt holding.

6

during the summer visitation in order to accommodate longer trips." If the parties choose to exercise this option, they must "make such arrangements before May 31 of every year." Mother testified that she and Father discussed the two-week visitation option and scheduled a two-week period during the 2013 summer that Father would have the extended visitation with CCB. Even assuming, however, that the parties agreed upon and scheduled the extended visitation, the Agreement does not make that visitation mandatory or require Father to pay cancellation costs if his plans to exercise his visitation rights were to change.[3]

[¶20]   The record does not contain clear and convincing evidence that Father violated an order requiring visitation with CCB. We therefore reverse that portion of the court's Order on Motion for Contempt that found Father in violation of the Agreement for failing to exercise visitation with CCB and vacate the award of day care costs associated with that finding.

## 2.     Health Insurance Contempt Finding

[¶21]  The district court ruled that the evidence Father submitted during the show cause hearing was not sufficient to prove that he had obtained the health insurance for KEB required by the parties' Agreement. The court therefore held Father in contempt for failing to provide insurance for KEB and/or proof of insurance. We again find that the record does not support the court's contempt finding.

[¶22]  Before turning to the proof of insurance question, we will first address Father's contention that the district court impermissibly modified the divorce decree by requiring Father to submit insurance that is satisfactory to Mother. In particular, Father points to the contempt order's language that allows Father to purge himself of the contempt related to the health insurance requirement "by presenting an acceptable health insurance policy to the Defendant and her attorney by January 1, 2014." Father contends that this language imposes a requirement that Mother must approve the health insurance policy, that such a requirement is not contained in the parties' Agreement, and that the court therefore modified the decree without a proper modification motion having been filed.

[¶23]  We disagree that the district court's order operated to modify the divorce decree. Though the order is not as clear as it might have been, we believe that the court's reference to an "acceptable health insurance policy" was not a reference to the terms of the policy or the insurer. During the show cause hearing, Mother had expressed concerns that the information submitted by Father showed not an insurance policy but rather membership in a healthcare discount club. The court itself was likewise troubled by

---

[3] We note that the Agreement requires that any modification of the Agreement must be in writing and executed with the same formality as the Agreement. The parties did not testify to any such modification, and the record contains no such writing.

prescription cards that seemed to disavow that they were insurance related. Reading the court's order in this context, we interpret the court's language as a reference to the proof of insurance rather than as a reference to the terms of the policy or the insurer. The court thus did not modify the health insurance provision by requiring Mother's approval of the policy.

[¶24] We turn then to whether the record supports the district court's contempt finding with respect to Father's obligation to provide health insurance for KEB. The clear and convincing evidence standard for a contempt holding required a showing that it was highly probable that Father had not obtained the required health insurance for KEB by the time of the show cause hearing in October 2013.

[¶25] Father testified that while he did not have the insurance in place when Mother filed her contempt motion on July 8, 2013, he had obtained the insurance by the end of July 2013. One of the exhibits received into evidence during the show cause hearing was Defendant's Exhibit B, which included three documents. The first document was a Secured Care Short Term Medical Insurance Application, underwritten by Companion Life Insurance Company, listing Father as the primary insured and KEB as a dependent child on the application. That application was dated July 17, 2013. The second document in Exhibit B was a letter from Secured Care to KEB thanking her for purchasing the "Secured + Insurance Plan." The last document in Exhibit B was a Schedule of Benefits, which identified Father as the insured and KEB as a covered dependent. The Schedule of Benefits provided a policy effective date of July 18, 2013, and contained a chart showing coverage and benefit amounts under the policy.

[¶26] The Schedule of Benefits included in Exhibit B was an excerpt from the health insurance policy that was ultimately submitted to the court along with Father's new trial motion. We are at a loss to understand why Father did not submit a copy of the entire health insurance policy during the show cause hearing, and it certainly left the court in the unenviable position of deciphering those documents that were submitted. Nonetheless, we cannot conclude, based on the record the court had before it at the show cause hearing, that Father's contempt had been proven with clear and convincing evidence. The evidence instead showed that by the end of July 2013, over two months before the show cause hearing, Father had obtained the required insurance. We therefore reverse that portion of the district court's Order on Motion for Contempt that held Father in contempt for failing to provide insurance for KEB and/or proof of insurance.[4]

---

[4] The record also contained a document that was entered into evidence as Defendant's Exhibit D. This document is a letter to KEB from Health Insurance Innovations and welcomes KEB as a member of the "Extra Care Package." This appears to be the "discount club" that caused some confusion. The letter does include attached cards that state "THIS IS NOT INSURANCE." While this is a confusing document, and it would have been helpful to have testimony explaining the letter and its referenced program, it does not by its terms negate the insurance documents that were submitted as Exhibit B.

**B.    Attorney Fees Order**

[¶27] Father argues that if this Court reverses the district court's contempt findings, we must also reverse the award of attorney fees because the district court tied that award to its contempt findings. We disagree.

[¶28] The district court did indeed find that the fees award was appropriate because of the contempt findings. The court also found, however, that fees should be awarded pursuant to Wyo. Stat. Ann. § 20-2-111 because Mother was required to bring her contempt motion as a means of enforcing the divorce decree. In its decision letter addressing Mother's application for attorney fees, the court explained, in part:

> "The decision to award attorney's fees rests within the sound discretion of the district court when such fees are authorized by statute." *Russell v. Russell*, 948 P.2d 1351, 1355 (Wyo. 1997), *citing Rocha v. Rocha*, 925 P.2d 231, 234 (Wyo. 1996). Wyo. Stat. Ann. § 20-2-111 states that
>
> > [i]n every action brought for divorce, the court may require either party to pay any sum necessary to enable the other to carry on or defend the action and for support and the support of the children of the parties during its pendency. The court may decree costs against either party and award execution for the costs, or it may direct costs to be paid out of any property sequestered, in the power of the court, or in the hands of a receiver. The court may direct payment to either party for such purpose of any sum due and owing from any person.
>
> The Wyoming Supreme Court has said that the above section allows a party to obtain attorney's fees for the original divorce action, as well as any attorney's fees incurred in enforcing the divorce decree. *Burnett v. Steeley*, 190 P.3d 132, 139, 2008 WY 94, ¶ 33 (Wyo. 2008).
>
> This Court has discretion to award attorney's fees where it sees fit and when it is allowed by statute. The Court finds that it is allowed under Wyo. Stat. Ann. § 20-2-111 to grant attorney's fees when a party must bring an action to enforce a divorce decree. [Mother] had to do that and fees are appropriate.
>
> . . . .
>
> The Court finds [Father] has purged himself of the contempt. However, this Court also finds [Mother] is entitled to attorney's fees for costs associated with the contempt of court issue. [Mother's Attorney] submitted an [Affidavit of

9

Costs] on December 11, 2013 and an itemized billing sheet showing the time spent on the Motion for Order Show Cause in the amount of $3,288.00.

> The Court finds [Father] is to pay [Mother] $3,288.00 for attorney's fees incurred enforcing the Decree of Divorce within sixty (60) days of the date this Decision Letter is filed.

[¶29] Although we have reversed the district court's orders of contempt in relation to the visitation and health insurance portions of the court's Order on Motion for Contempt, we find no abuse of discretion in the court's award of attorney fees to Mother. Regardless of whether there was the required clear and convincing evidence to support a contempt holding, the record does show that Mother was forced to file her motion in order to enforce the divorce decree and the parties' Agreement. The record shows that although the parties' divorce was finalized by February 2013, Father had not obtained health insurance for KEB by the time Mother filed her contempt motion in July 2013. Indeed, it was not until after the show cause motion was filed that Father took steps to obtain the insurance. Additionally, the contempt motion was required to enforce Mother's right under the Agreement to use outbuildings associated with the marital residence. Under these circumstances, the district court did not abuse its discretion in ruling that Mother was entitled to an award of attorney fees. *See Burnett v. Steeley*, 2008 WY 94, ¶ 33, 190 P.3d 132, 139 (Wyo. 2008) ("There is no question that [Wyo. Stat. Ann. § 20-2-111] allows a party to obtain reimbursement of attorney's fees incurred in original divorce actions as well as proceedings to modify or enforce divorce decrees.").

## CONCLUSION

[¶30] We conclude that the district court erred in holding Father in contempt for failing to exercise his visitation rights and in ordering Father to pay Mother's related day care expenses. We further conclude that the court erred in holding Father in contempt for failing to obtain insurance and/or provide proof of that insurance. We also conclude, however, that the court properly required Father to pay attorney fees Mother incurred when she was required to seek court enforcement of the divorce decree. Affirmed in part and reversed in part.